## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **KAREN BARNES** | § | |
| | § | |
| **v.** | § | **NO. 4:23-CV-01012-BD** |
| | § | |
| **ROAD CARRIERS, INC.,** *et al.* | § | |

## MEMORANDUM OPINION AND ORDER

In this diversity suit arising from a motor-vehicle collision, defendants Road Carriers, Inc., and Conrado Pardillo Carou ("Pardillo" in this order; "Carou" in some previous docket entries) filed a motion for partial summary judgment targeting parts of plaintiff Karen Barnes's claims against them. Dkt. 50 (motion and attachments); *see* Dkts. 51–55 (response and attachments), 56 (reply), 58 (sur-reply), 79 at 2 (scheduling order allowing supplementation), 88 (Barnes's supplement), 89 (the defendants' supplement). Barnes moved for discovery sanctions, Dkt. 82; *see* Dkts. 84 (response), 85 (reply), 86 (sur-reply), and to exclude some of the defendants' evidence as untimely, Dkt. 94; *see* Dkts. 96 (response), 97 (reply).

The court will grant in part and deny in part the defendants' motion for partial summary judgment and Barnes's motion for discovery sanctions. It will grant Barnes's motion to exclude the untimely evidence.

## BACKGROUND

### I.  Factual Background

The collision occurred on a highway service road near a Love's Travel Mart. Driving a tractor-trailer for Road Carriers, Pardillo was trying to exit the Love's parking lot and enter the service road. Driving a passenger vehicle on the service road, Barnes had pulled up in front of Pardillo's truck. Pardillo claims that, given the height of his cab and the angle at which it sat as he approached the service road, he could not see Barnes's vehicle in front of him. As he moved slowly forward to enter the service road, the front of his truck collided with the passenger side of Barnes's car. The collision dented the rear passenger side of Barnes's car and slightly damaged the front of Pardillo's

truck, but it did not break any windows or cause air bags to deploy. Nevertheless, Barnes was taken to a hospital for medical attention after the collision.

## II. Relevant Procedural History

Barnes sued Pardillo and Road Carriers in state court, asserting claims for negligence against both defendants and gross negligence against Road Carriers. Road Carriers removed the case to this court based on diversity of the parties' citizenships. Barnes amended her complaint to add a gross-negligence claim against Pardillo. The parties then filed several motions, including the three addressed here.

### A. The defendants' motion for partial summary judgment

Stressing the minor nature of the collision, the defendants include in their motion for partial summary judgment this picture of the two vehicles shortly after the collision:



They argue that (1) Barnes cannot maintain her claims against Road Carriers for negligent entrustment and negligent hiring and retention because it admitted or stipulated that it is vicariously liable for Pardillo's allegedly tortious driving, (2) they are entitled to judgment on Barnes's gross-negligence claims, and (3) Barnes cannot show that either of them proximately caused her alleged damages or disability.

The defendants premise their first argument on Road Carriers' vicarious-liability admission in its answer to the operative complaint, Dkt. 11 at 2, and the "general rule" that "evidence

supporting alternative liability theories such as negligent hiring or negligent entrustment is inadmissible when the defendant has stipulated to vicarious liability," *Simmons v. Bisland*, 2009 WL 961522, at *4 (Tex. App.—Austin 2009, pet. denied); *see Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (explaining that, under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity apply state substantive law and federal procedural law). They add that, under Texas law, Pardillo's undisputed possession of a valid, unrestricted driver's license "is evidence of [his] competency absent any evidence to the contrary," *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied), and that Barnes has not produced any evidence either to refute Pardillo's competency or to demonstrate that Road Carriers should not have hired or retained Pardillo or, having hired him, failed to sufficiently train or supervise him.

As to their second point, the defendants first assert that gross negligence requires an underlying negligence claim and that, because of Road Carriers' vicarious-liability admission, Barnes has no viable negligence claim against Road Carriers. They also assert entitlement to summary judgment on Barnes's gross-negligence claim against Pardillo, citing *Medina v. Zuniga* for the proposition that "thoughtless, careless, and risky" driving is negligent but not grossly negligent, 593 S.W.3d 238, 248–50 (Tex. 2019), and calling the collision at issue here a garden-variety accident.

On their final point, the defendants assert that their conduct was not the proximate cause of Barnes's disability or her seven-figure claim for past and future lost wages and medical expenses. They point to several other personal-injury lawsuits that Barnes has brought, including one based on a slip-and-fall injury more than a decade ago and two others based on motor-vehicle collisions—the first approximately ten years before the one at issue here, the second just a month or two before this one—and assert that "no person of ordinary intelligence would have anticipated the present lawsuit for over $1,000,000" arising from a five-mile-per-hour collision that did not even break a window in Barnes's car. They also cite Barnes's own deposition testimony in support of their contention that Barnes took medical leave from her employment because of anxiety she experienced at work, rather than anything having to do with the collision at issue here.

In response, Barnes argues that the vicarious-liability admission does not defeat her negligence claim against Road Carriers because she also alleged gross negligence against that defendant; Road Carriers' "no evidence" challenge to the gross-negligence allegation is improper in federal court and, in any event, fails; and, if the court requires a response to the "no evidence" challenge, she should be able to depose both Pardillo and a corporate representative of Road Carriers before the court rules on the defendants' motion for partial summary judgment. She also argues that the "respondeat superior admission rule" (as some courts have labeled the type of argument Road Carriers makes based on its vicarious-liability admission) is not a settled point of Texas law, complicating any *Erie* analysis the court might conduct. Finally, she argues that there is evidence to raise a fact question on her alleged damages, highlighting medical records indicating that she experienced chest and neck pain after the collision.

The defendants' reply briefly addresses several of the points from the motion. Barnes's sur-reply asserts that Pardillo is not entitled to summary judgment on her gross-negligence claim because the operative complaint alleged that he was distracted at the time of the collision by cell-phone use.

### B.  Barnes's motion for discovery sanctions

In her motion for sanctions under Federal Rule of Civil Procedure 37(d), Barnes asserts that, despite asking defendants' counsel to provide dates for the deposition of Road Carriers' corporate representative on five occasions and the court amending the scheduling order so that the deposition could be taken, *see* Dkts. 76–79, Road Carriers failed to produce a corporate representative for deposition or to object to or move to quash Barnes's notice of that deposition. Accusing the defendants of gamesmanship, she seeks a variety of sanctions, including an order prohibiting Road Carriers "from supporting its motion for partial summary judgment . . . or opposing [her] pleaded claims for gross[] negligence, negligent entrustment, negligent hiring, negligent supervision and negligent training on the basis of an alleged failure by Plaintiff to establish elements about which the corporate representative . . . refused to attend his deposition and testify to." Dkt. 82 at 7.

In response, the defendants repeat arguments from their motion for partial summary judgment and, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), allude to arguments that they could have made in a motion filed under Federal Rule of Civil Procedure 12(b)(6). Dkt. 84 at 1. They then focus on avoiding litigation-ending sanctions, citing *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994), and noting the heightened standard that applies when a court considers striking a pleading. *Id.* at 5. In resisting a bad-faith finding under that standard, they assert that "Road Carriers' management is comprised of owner-operators who drive tractor-trailers during regular business hours. While Defendant Road Carriers' conduct may be negligent, its failure to appear for deposition is not a willful abuse of the judicial system." *Id.* at 6. They further assert that "lesser sanctions are available to the Court." *Id.* at 10.

In reply, Barnes reasserts her entitlement to depose a corporate representative of Road Carriers and argues that sanctions are appropriate based on her inability to do so. The defendants' sur-reply asserts that a deposition of Road Carriers' corporate representation would be improper, or is at least not warranted, because Barnes's operative complaint fails to state a claim upon which relief can be granted against Road Carriers. But it cites its motion for summary judgment, rather than any motion to dismiss, in support of that assertion. It concludes with a recap of why, in the defendants' view, litigation-ending sanctions are not warranted.

### C.  Supplemental summary-judgment filings

The court allowed the parties to supplement their summary-judgment briefing after requested depositions had been taken. *See* Dkts. 76–79. Both parties took advantage of that opportunity after Pardillo had been deposed. (Road Carriers' corporate representative was scheduled for a deposition the same day as Pardillo's, but as already noted, that deposition did not happen.)

In her supplemental brief, Barnes recaps her argument regarding Road Carriers' vicarious-liability admission and its alleged gross negligence. She also argues that Pardillo's deposition testimony at least raises a fact question regarding his gross negligence, surmising that Pardillo was using a cell phone at the time of the collision even though he testified at his deposition that he had

not been. As to Road Carriers' alleged gross negligence, Barnes highlights Pardillo's testimony that he had received traffic tickets and been in accidents since obtaining his commercial driver's license in 2004—and that Road Carriers did not ask him about those previous incidents or provide any remedial training, even though one of the previous accidents (in which Pardillo's truck rear-ended a car) had happened only four to six months before the collision at issue here. Barnes's supplemental brief also highlights Pardillo's testimony that the collision at issue here could likely have been avoided if Road Carriers had provided Pardillo with corrective training. It concludes with a renewed request for Rule 37 sanctions for Road Carriers' failure to present a corporate representative for deposition if the court finds that Pardillo's testimony is not alone sufficient to raise a fact question on Road Carriers' alleged gross negligence.

In their supplemental brief, the defendants focus on different parts of Pardillo's deposition testimony, arguing that the testimony they highlight supports an order granting summary judgment on Barnes's negligence and gross-negligence claims against both defendants. The brief notes that Pardillo testified that he received fewer than five traffic citations in the past ten years as a truck driver and that Road Carriers not only interviewed him and required him to complete an application before hiring him, but also that it regularly reviewed his driving record. The defendants' supplemental brief also highlights Pardillo's testimony that the collision at issue could not have been avoided if Road Carriers had done a better job investigating and training him. It goes on to cite Texas Civil Practice and Remedies Code § 72.053(b), a provision not mentioned in the defendants' motion for partial summary judgment, in support of an argument that Barnes "must prove that Defendant Road Carriers failed to comply with a regulation or standard resulting in her injury," then argues that Barnes failed to designate an expert on the applicable standards and regulations and, at her deposition, failed to mention any act or omission constituting a breach of those standards and regulations.

### D.  Barnes's motion to exclude untimely evidence

In her motion to exclude evidence, Barnes explains that the defendants served a subpoena for medical records regarding a subsequent collision in which she was involved on a non-party witness,

calling for production of documents after the discovery deadline. She points out that, several months later, without having sought leave to alter the scheduling order and with no showing of good cause to extend the deadline, the defendants supplemented their discovery with records obtained through the subpoena. Barnes seeks to exclude the untimely discovery, asserting that she relied on the discovery deadline and that the new records come as an unfair surprise to her, given that it is now too late for her to conduct any follow-up discovery to investigate the basis for the statements in the records or any reason that they may be inaccurate.

In response, the defendants noted that they served the third-party subpoena and deposition on written questions before the close of discovery but concede that the documents were produced after the deadline passed. They note that Barnes filed her motion to exclude nearly four months after they served the subpoena and nearly two months after the defendants produced the documents, arguing that the motion to exclude is itself untimely. They also argue that Barnes cannot show prejudice because her counsel knew of the records at the time of her deposition and that Barnes failed to include the records or information about the event underlying them (another collision that the defendants may contend is the true cause of her injuries) in a supplement to her initial disclosures under Federal Rule of Civil Procedure 26.

In reply, Barnes cites cases explaining that subpoenas and depositions on written questions must not only be served before the discovery deadline but must also require production of documents before that deadline. She also notes that the defendants cite no authority for their assertion that the motion to exclude should be denied because she did not move to quash or object to the discovery requests.

**LAW**

### A.  Motions for summary judgment

A summary-judgment movant bears the initial burden of demonstrating, by reference to record evidence, if necessary, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

7

(1986). A fact is material if, under the governing substantive law, it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the movant would bear the burden of proof at trial, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense" it seeks to prove. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But when the nonmovant would bear the burden of proof at trial, the movant may carry its initial summary-judgment burden by asserting that "the nonmovant has failed to establish an element essential to" its case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). The nonmovant may then avoid summary judgment by demonstrating the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] party opposing a properly-supported summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (quotation marks omitted). Although the court must resolve all reasonable doubts in the nonmovant's favor, *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept. 1981), "[c]onclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." *Sanches v. Carrollton-Farmers Branch ISD*, 647 F.3d 156, 165 (5th Cir. 2011).

A motion for partial summary judgment may seek judgment on fewer than all claims or defenses, *Ross v. TDCJ*, No. 3:98-CV-1344-D, 2001 WL 1335873, at *1 n.2 (N.D. Tex. Oct. 25, 2001), or specify "the part of each claim or defense . . . on which summary judgment is sought," Fed. R. Civ. P. 56(a). It is meant to "narrow the issues for trial." 10B Wright & Miller, Federal Practice and Procedure ("FPP") § 2737 (4th ed.). Though not a final judgment, "[a] partial summary judgment order" is "a pre-trial adjudication that certain issues are established for trial of the case." *FDIC v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994); *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (explaining that a "[partial] summary judgment serves . . .

to root out, narrow, and focus the issues, if not resolve them completely"); *see also* Fed. R. Civ. P. 56(g) (providing that, "[i]f the court does not grant all the relief requested by [a summary-judgment] motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case"). "[I]f the court determines that entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudication, it may decline to do so." FPP § 2737 (4th ed.) (footnote omitted).

### B. Motions for discovery sanctions under Rule 37

Rule 37(d) addresses, among other things, a party's failure to attend its own deposition. It provides, in relevant part:

> (1) . . . (A) Motion; Grounds for Sanctions. The court where the action is pending may, on motion, order sanctions if:
>
> (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition
>
> . . .
>
> (2) Unacceptable Excuse for Failing to Act. A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).
>
> (3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(b)(2)(A)(i)–(vi) provides that sanctions

> may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part; [and]

(vi) rendering a default judgment against the disobedient party.

A court "has broad discretion in fashioning its sanction" under that rule. *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019), *as revised* (June 6, 2019). The Fifth Circuit generally "requires the district court to determine the sanctions are 'just' and 'related to the particular claim' which was at issue in the order to provide discovery." *Id.* But to support an award of litigation-ending sanctions, a "district court must make four additional findings . . . : (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Id.* at 758–59 (quoting *Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994).

## C. Motions to exclude untimely evidence

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires disclosure of "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e)(1) provides that

> [a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

And under Rule 37(c)(1),

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

10

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The Fifth Circuit "reviews evidentiary rulings, including decisions to exclude evidence, for abuse of discretion." *King v. King*, 117 F.4th 301, 306 (5th Cir. 2024) (citing *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016)). When doing so, it generally employs

> the "*CQ* factors" . . . . *See, e.g.*, *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 279–80 (5th Cir. 2009); *see also [Moore v. CITGO Refin. & Chems. Co., L.P.*, 735 F.3d 309, 318–19 (5th Cir. 2013)] (referring to the *CQ* factors as the "*Sierra Club* factors"). These factors include: (1) the importance of the evidence; (2) any prejudice to the opposing party that would result if the evidence were admitted; (3) the availability of a continuance to cure such prejudice; and (4) the party's explanation for its failure to comply with Rule 26 in the first instance. *CQ, Inc.*, 565 F.3d at 280.

*Id.* at 306–07 (footnote omitted).

## DISCUSSION

### I. Motion for Partial Summary Judgment

The defendants' motion for partial summary judgment seeks to significantly narrow the issues for trial. It asserts entitlement to judgment on Barnes's gross-negligence claim against Pardillo, her negligence and gross-negligence claims against Road Carriers, and her contention that the alleged tortious conduct proximately caused her damages.

The defendants are entitled to summary judgment on the gross-negligence claim against Pardillo. But they are not entitled to summary judgment on Barnes's claims against Road Carriers or on proximate cause.

### A. Pardillo's alleged gross negligence

In *Medina*, the Texas Supreme Court considered whether the conduct of a teenage driver in a school parking lot rose to the level of gross negligence. 593 S.W.3d at 241–42. The record reflected that Medina, the driver,

11

turned off a public street and onto an entrance drive to the school's parking lot, where he stopped to talk to two students through his passenger window. Another driver pulled in behind Medina, whose truck blocked the drive, and honked at him. Medina briefly drove his truck in reverse before proceeding forward into the parking lot. Evidence adduced at trial suggested Medina was attempting to "mess with" the other driver—a friend—by creeping his truck toward her in reverse before driving forward.

Medina proceeded forward through the horseshoe-shaped drive, which provided access to a short strip of parking spaces before emptying back onto the same public street by which Medina had arrived. [Plaintiff] Zuniga's accident reconstructionist testified that Medina accelerated rapidly through the parking lot, reaching a top speed of 24 miles per hour. To reach that speed in such a short distance, the reconstructionist testified, Medina must have pressed the accelerator almost to the floor.

Medina decreased his speed—Zuniga's reconstructionist suggested 19 miles per hour—as he approached the exit and prepared to turn right onto the public street. At the time, Zuniga was crossing the exit driveway [on foot] headed toward the sidewalk. There was no stop sign posted at the exit and Medina admitted he did not stop. Medina testified he looked left before exiting but conceded he failed to look right. He saw Zuniga only momentarily before he struck her as he pulled onto the street. The evidence showed that Medina attempted to brake immediately before impact. Photographs taken of the accident scene showed that the right-rear wheel of Medina's truck came to rest on the border between the driveway and sidewalk. Zuniga's expert testified that Medina likely drove on the sidewalk as he turned out of the parking lot.

*Id.* at 242.

That evidence did not support a gross-negligence finding. "Medina's driving was thoughtless, careless, and risky," the court allowed. *Id.* at 249. "But any driver knows that our roads are replete with thoughtless, careless, and risky drivers," *id.* at 250, and "[g]ross negligence can be supported only by an *extreme* degree of risk, not 'a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" *Id.* (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). The court explained that

[a]ny of Medina's negligent acts here are common ingredients in a garden-variety car accident, whether involving a pedestrian or another vehicle. Doubtless, the failure to drive at a safe speed and the failure to look both ways before exiting a parking lot makes an accident more likely. But those failures, even taken together, do not amount to gross negligence. If they did, punitive damages would be routinely

available in the most common types of auto accidents. Whatever the threshold for gross negligence is, it must be higher than that.

*Id.*; *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994) (stating that "[a]n act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent").

The defendants argue that, if Medina's conduct was no evidence of gross negligence, Pardillo's conduct is likewise no evidence of gross negligence. They are correct.

Pardillo testified at his deposition that his view of Barnes's car was blocked by the height and angle of his cab and that he had been looking to the left (the direction of oncoming traffic on the service road) for several seconds before the collision and was moving forward slowly when the front of the cab hit the passenger side of Barnes's car. Dkts. 88-1 at 20–21, 89-2 at 11–14; *see* Dkt. 50 at 14 (citing a summary-judgment exhibit reflecting that a responding officer estimated that Pardillo's truck collided with Barnes's car at about five miles per hour). That describes a fender-bender. *See* Dkt. 88-1 at 22 (Pardillo's deposition testimony that he was able to easily repair the minor damage to the bumper of his vehicle); *supra* p. 2 (photograph showing the damage to Barnes's car). It is no evidence of gross negligence under Texas law. *See Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *3 (W.D. Tex. June 29, 2022); *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016); *Medina*, 593 S.W.3d at 250; *see also, e.g.*, *Rogers v. Blake*, 240 S.W.2d 1001, 1004 (Tex. 1951) (concluding that a conscious failure to stop at a stop sign, standing alone, does not constitute gross negligence); *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 695 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (finding a truck driver's decision to continue driving with a blown-out tire at night insufficient to constitute gross negligence). *Cf. Perez Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *3 (N.D. Tex. 2004) (denying a motion for summary judgment on gross negligence where the defendant truck driver drove 56–58 miles per hour in an area with controlled intersections, intentionally failed to observe the roadway for 14–20 seconds, and ran a stop sign as a result).

Before Pardillo was deposed, Barnes argued that his alleged use of a cell phone changes that conclusion. Dkt. 58 at 2–4 (citing, *inter alia*, *Braun v. Clean Harbors Envtl. Servs., Inc.*, No. 1:14-

13

CV-524, 2016 WL 7551118, at *5 (E.D. Tex. Jan. 25, 2016); *Montgomery v. State*, 369 S.W.3d 188, 194–95 (Tex. Crim. App. 2012)). But the defendants challenged Barnes's cell-phone allegation, and Pardillo's deposition testimony fails to raise a fact question about it. *See Matsushita*, 475 U.S. at 586; *Johnson*, 90 F.4th at 460. Pardillo testified that he had a cell phone with him in the cab and had received a single call approximately 40 minutes before the collision. Dkt. 88-1 at 19–20. But he testified that, "at the moment of the accident, [he] was not using the cell phone." *Id.* at 20. Barnes's argument that Pardillo nevertheless must have been distracted by cell-phone use at the time of the collision, Dkt. 88 at 3, is just speculation, which is insufficient to avoid summary judgment, *see Sanches*, 647 F.3d at 165. *Cf. Denham v. Bark River Transit, Inc.*, No. 2:18-CV-00246, 2019 WL 4887256, at *4 (S.D. Tex. Oct. 3, 2019) (finding "a disputed issue of material fact regarding whether [a defendant driver] was grossly negligent by using his cell phone" where "the evidence indicates that he made or received several calls around the time of the accident"); *Braun*, No. 1:14-CV-524, 2016 WL 7551118, at *4 (noting that, in *Montgomery*, there was "evidence that [the defendant driver] was using her cell phone at the time of the accident").

### B.  Road Carriers' alleged negligence and gross negligence

As already noted, the defendants' request for summary judgment on Road Carriers' liability for negligence and gross negligence depends on the respondeat-superior admission rule. *See Werner Enters., Inc. v. Blake*, No. 23-0493, 2025 WL 2239275, at *13 (Tex. June 27, 2025) (Young, J., concurring) (explaining that "[r]espondeat superior is a way to hold an employer responsible without having to show the employer's separate negligence" and that, "[w]hen an employer admits to course and scope, the admission rule requires the plaintiff to accept 'yes' for an answer: *yes, as the employer, we will answer for our employee tortfeasor's negligence*"). The parties dispute whether the rule is settled law in Texas, and *Werner* confirms that it is not. *Id.* at *12 ("sketch[ing] some observations about the [respondeat-superior] admission rule" and supporting its adoption by the Supreme Court of Texas but "leav[ing] open all possible outcomes in future cases").

There is no need to make an "*Erie* guess" here, though. *See BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 401 (5th Cir. 2017) (explaining that, in the absence of binding

precedent from the Supreme Court of Texas on an issue of Texas law, a federal court must predict how that court would resolve the issue). *Cf. Werner Enters., Inc. v. Blake*, 672 S.W.3d 554, 632 (Tex. App.—Houston [14th Dist.] 2023, pet. granted) (Wilson, J., dissenting) (noting that "[a]t least eight United States District Court judges have predicted that the Supreme Court of Texas would adopt the [respondeat-superior admission rule] if this question were before the high court"). Assuming it is part of Texas law, the respondeat-superior admission rule generally applies only in the absence of a gross-negligence allegation against the defendant employer. *See, e.g.*, *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002, pet. denied)); *see also Werner*, 2025 WL 2239275, at *14 (Young, J., concurring) (although stating that "[w]hether and how a gross-negligence exception would apply are important questions that this Court will presumably need to address in an appropriate case," explaining that "[i]n the interim, . . . trial courts should be very cautious about using a mere allegation of gross negligence as a basis to honor the admission rule in theory but defeat it in practice"); *Werner*, 672 S.W.3d at 637 (Wilson, J., dissenting) (explaining that, "[i]f the injured party proves an employer's gross negligence, malice, or fraud by clear and convincing evidence, the employer should be liable for exemplary damages, even if the employer admits to respondeat superior").

Here, Barnes alleged that Road Carriers was grossly negligent. Dkt. 7 at 4; *see Arrington's Est. v. Fields*, 578 S.W.2d 173, 179 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e) (explaining that "[a] master may be guilty of gross negligence in hiring an incompetent servant and held liable for exemplary damages where the servant is only found guilty of ordinary negligence"). And although the defendants argue that she cannot sustain that allegation at the summary-judgment stage—an argument that, if valid, would likely overcome her mere allegation of gross negligence, *see Werner*, 2025 WL 2239275, at *14 (Young, J., concurring); *Werner*, 672 S.W.3d at 637–38 (Wilson, J., dissenting)—their failure to present a corporate representative for deposition makes the fight unfair. As explained in Part II of this order, Barnes has shown entitlement to Rule 37 sanctions for that failure, and the appropriate sanction at this procedural juncture is to disallow Road Carriers' summary-judgment argument on gross negligence. With its alleged gross negligence still on the

15

table, Road Carriers cannot benefit (at this stage, at least) from the respondeat-superior admission rule.

That leaves the question of whether Road Carriers is entitled to summary judgment on any of Barnes's ordinary-negligence claims against it. It is not. Those claims all depend, in part, on what Road Carriers did or did not do in connection with hiring, retaining, training, and supervising Pardillo and entrusting him with a big rig. The relevant facts could have been explored at a deposition of Road Carriers' corporate representative. But as noted, that deposition—which might have supported Barnes's claims against Road Carriers or, alternatively, supported Road Carriers' argument for summary judgment—never happened, and the discovery period has closed. Dkt. 91 at 2; *see* Dkt. 94 at 2 (Barnes's observation that, "[i]n anticipation of th[e] trial date, the parties have conducted and completed discovery").

Pardillo's deposition testimony, however, provides enough support for Barnes's claims against Road Carriers to reach the jury. Pardillo's testimony indicated that: (1) only three people work at Road Carriers, and they are all truck drivers; (2) when Pardillo started work at Road Carriers, no one asked him (a) whether he had been involved in any collisions while driving for his previous employer, (b) whether he had been involved in any previous lawsuits, or (c) about tickets that he had received; (3) Pardillo did not know whether anyone at Road Carriers ever checked his driving record or his violation history; (4) Pardillo had received several tickets or citations, including for running a stop sign, for failure to keep a proper lane (resulting in a "guilty" disposition), and for following another vehicle too closely; (5) no one at Road Carriers ever raised any issue with his driving record or made him undergo any kind of remedial training; (6) he had been in another collision four to six months before the one at issue here, and Road Carriers did not take any action against him based on that earlier collision; and (7) he believed that, if Road Carriers had provided him with training or supervision, the collision at issue here could have been avoided. Dkt. 88-1 at 8, 10, 11, 12, 14, 15, 18, 22–23; Dkt. 89-2 at 9.

But Pardillo also testified that: (8) he has had a commercial driver's license for more than two decades; (9) he had received "approximately" fewer than five traffic citations in the ten years

16

before his deposition was taken; (10) Road Carriers' owner checked (or at least may have checked—the testimony is not clear) his driving record at the time he was hired; (11) the collision at issue here could not have been avoided if Road Carriers had performed a better background check on him or investigated his prior collisions and citations; and (12) he did not need additional training on how to exit the driveway of a truck stop or additional training or counseling after the collision that happened four to six months before this one. Dkt. 89-2 at 7, 10, 15, 16.

Taken together, those snippets of Pardillo's deposition testimony suggest that Road Carriers may have known, or at least should have known, that letting Pardillo drive a vehicle with an empty weight exceeding 33,000 pounds, *see* Dkt. 88-1 at 25, might have presented a risk, and possibly an extreme one, to the public. Like the missing deposition testimony of a corporate representative of Road Carriers, evidence admitted at trial could bear on that and other potentially relevant questions. *See Rosell*, 89 S.W.3d at 655 (putative elements of negligent hiring, supervision, or retention); *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 48 (Tex. App.—San Antonio 2001, no pet.) (putative elements of negligent entrustment); *see also Werner*, 2025 WL 2239275, at *11 (noting that the Supreme Court of Texas "ha[s] not recognized negligent training or supervision as an independent theory of tort liability" but nevertheless stating that, "[a]ssuming [such] claims . . . have independent viability apart from an employer's usual respondeat superior liability, [they] would be subject to the same requirement [that the court has] have applied to negligent hiring claims"); *id.* at *13 (Young, J., concurring) (merely "[a]ssuming that claims like negligent entrustment, training, hiring, and supervision are proper in the first place"); *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 142 n.4 (Tex. 2022) (noting that the Supreme Court of Texas "ha[s] not ruled definitively on the existence, elements, and scope of torts such as negligent training"); *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010) (stating that, "[t]o sustain . . . a claim based on a failure to screen, a plaintiff must show that anything found in a background check 'would cause a reasonable employer to not hire' the employee, or would be sufficient to put the employer 'on notice that hiring [the employee] would create a risk of harm to the public'" (quoting *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796–97 (Tex. 2006), with alteration added).

Evidence presented at trial might support a reasonable conclusion that Road Carriers was negligent in one or more of those respects. It might even support a reasonable conclusion that Road Carriers was grossly negligent. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing Texas Civil Practice and Remedies Code § 41.001(11) and noting the objective and subjective components necessary to a gross-negligence finding under Texas law). Or it might support the opposite conclusion on one or both of those points. At this stage, though, and in the absence of Road Carriers' deposition, the court cannot properly take the matter away from the jury. *See Jezek v. R.E. Garrison Trucking, Inc.*, 637 F. Supp. 3d 445, 453 (N.D. Tex. 2022).

### C. Proximate cause of Barnes's alleged damages

As the Supreme Court of Texas explained in *Werner*,

> [a] negligent actor incurs liability only for damages proximately caused by his negligence. Proximate cause is not established merely by proof that the injury would not have happened if not for the defendant's negligence. Instead, proximate cause requires, among other things, proof that the defendant's negligence was a substantial factor in causing the injury. The substantial-factor requirement incorporates the idea of responsibility into the question of causation. Thus, even if the defendant's negligence is part of the causal chain of events that led to the injury, the defendant is not liable if his involvement was a mere happenstance of place and time. Instead, the substantial-factor requirement means that liability falls only on a party whose substantial role in bringing about the injury is such that he is actually responsible for the ultimate harm. Liability does not fall on other participants in the causal chain whose actions merely created the condition which made the injury possible.

2025 WL 2239275, at *1 (citations and quotation marks omitted); *see id.* at *4–5 (explaining the requirements for showing proximate cause in Texas). Although proximate cause may sometimes be decided by the court as a matter of law, *see, e.g., id.* at *5, it is usually decided by the jury, *In re Molina*, 575 S.W.3d 76, 82 (Tex. App.—Dallas 2019 [mand. denied]); *see UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 105 (Tex. 2017) (stating that "[i]t goes without saying that under tort law generally, questions of negligence and proximate cause are quintessential jury questions"). "[D]etermining the amount of damages is" also "a quintessential responsibility of juries." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021).

18

In asking the court to take those determinations away from the jury, the defendants assert that "[Barnes]'s damages do not raise a genuine dispute of material fact because of her background in personal injury claims," citing evidence of "a slip and fall injury in 2013/2014, a first motor vehicle accident in 2015/2016, a second motor vehicle accident in September/October 2022," and the collision at issue here. Dkt. 50 at 12. They claim that Barnes "lacks any expert opinion differentiating the relationship between the two motor vehicle accidents in 2022" and therefore "cannot establish the first prong, cause-in-fact, of proximate causation." *Id.* They further claim, based on a responding officer's deposition testimony that the collision at issue here was "typical" and that the officer was "surprised" to learn that Barnes was "claiming damages of over $1,000,000 because of this minor, low-speed collision," that Barnes also cannot establish the foreseeability prong of proximate cause. *Id.*

Those arguments implicate Texas precedent addressing the circumstances in which expert testimony of causation is required in personal-injury cases. In *Guevara v. Ferrer*, another case involving a vehicle collision, the Supreme Court of Texas explained that "expert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons." 247 S.W.3d 662, 663–64 (2007). The court cited cases involving a pre-existing tumor, a skull-fracture diagnosis, and an infection as involving "medical conditions outside the common knowledge and experience of jurors." *Id.* at 665–66; *see Jelinek v. Casas*, 328 S.W.3d 526, 534 (Tex. 2010) (explaining that "expert testimony was crucial to link the prescription lapse to an infection causing additional pain and suffering beyond what [the plaintiff] would otherwise have experienced"). It also cited *Morgan v. Compugraphic Corp.* for the proposition that, "[g]enerally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." 675 S.W.2d 729, 733 (Tex. 1984); *see id.* (concluding that expert medical evidence was not necessary to prove that chemical fumes from a typesetting machine caused the plaintiff's medical symptoms).

19

The court went on to explain in *Guevara* that, "[i]n personal injury cases, trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence, and the course of the injured person's physical condition and progress after the occurrence." 247 S.W.3d at 666–67. In the vehicle-collision context, that type of lay evidence will suffice to prove some damages:

> For example, if [the injured person] had been pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident, then the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons.

*Id.* at 667. But when the situation is more complicated (in *Guevara*, the elderly person on whose behalf the suit was brought underwent two abdominal surgeries, spent months in the hospital, and was given extensive medical care), expert causation testimony is required. *Id.* at 669 (noting that "[p]atients in hospitals are often treated for more than one condition brought on by causes independent of each other"). The court explained that

> [n]on-expert evidence of circumstances surrounding the accident and [the injured person's] complaints is sufficient to allow a layperson of common knowledge and experience to determine that [the person's] immediate post-accident condition which resulted in his being transported to an emergency room and examined in the emergency room were causally related to the accident. Thus, the evidence is legally sufficient to support a finding that some of his medical expenses were causally related to the accident. On the other hand, the evidence is not legally sufficient to prove what the conditions were that generated all the medical expenses or that the accident caused all of the conditions and the expenses for their treatment.

*Id.* at 669–70. The court therefore remanded the case to the court of appeals "to consider remittitur as to expenses for which expert evidence is required." *Id.* at 670.

If a picture is worth a thousand words, the one reproduced at the outset of this order suggests that Barnes will have difficulty convincing a jury that the collision at issue caused the damages she seeks. As the court previously noted, the only experts Barnes has secured opined on damages, not causation. *See* Dkt. 87 at 11, 12. And one of the officers who responded to the scene of the collision testified at her deposition that "[n]othing about [the collision] is worth a million dollars." Dkt. 56

20

at 6 (deposition page 19, line 20). The body-cam video of a first responder who spoke to Barnes and fellow first responders after the collision, Dkt. 50-8 at 1, will presumably be another obstacle in Barnes's path to reaching anything close to the damages she claims.

Nevertheless, Barnes has presented summary-judgment evidence that the collision may have caused her at least some injury. *E.g.*, Dkt. 53-1 at 8 (hospital record indicating that, on the day of the collision, Barnes "present[ed] with concerns for shoulder pain and low back pain after being involved in [the collision at issue]"). The record just cited categorizes Barnes's injury as "mild," *id.*, which is another sign that a jury would likely not find her damages claim realistic.

To the extent that Barnes may have sustained a mild injury from this minor collision, she can rely on lay evidence to try to prove her case to a jury. Because it is at least possible that the jury, after considering all of the evidence, would conclude that the collision injured Barnes to some degree, the defendants are not entitled to summary judgment on damages. *See Matsushita*, 475 U.S. at 586. That said, to the extent that Barnes claims injuries that a reasonable juror drawing upon "common knowledge and experience," *Guevara*, 247 S.W.3d 662, 664, would not associate with this type of collision, she would need to present and rely on expert evidence. Her failure to do so will presumably make any damages award she could properly recover significantly lower than the amounts she has sought. *See id.* at 669–70.

## II. Motion for Discovery Sanctions

Both Barnes and the defendants had difficulty scheduling depositions, *see* Dkts. 76–78, so the court gave them additional time to do so. Its final such order set a March 14, 2025, deadline for the remaining depositions that the parties said needed to be taken. Dkt. 79 at 2. That order issued after all parties "agree[d] on a March 14, 2025, deadline to complete the necessary discovery" and stated that they would "work together to complete the necessary discovery by such deadline." Dkt. 77 at 5.

But on the eve of the corporate representative's deposition, which was scheduled for three days before the deadline, Road Carriers informed Barnes that no corporate representative would be available. Road Carriers did not, however, either object to the notice of that deposition or move to

21

quash it. On the day that the deposition had been scheduled, Barnes's attorney went on the record to take a certificate of nonappearance. Dkt. 82-7.

Rule 37 gives courts broad discretion to fashion an appropriate sanction, *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *see* Fed. R. Civ. P. 37(c)(1) ("unless"; "may"), and the parties present differing views on what sanction, if any, is appropriate. Road Carriers focuses on avoiding litigation-ending sanctions, discussing the *Conner* factors that govern that type of relief.

Litigation-ending sanctions are not warranted here. But Road Carriers' failure to present a corporate representative for deposition, especially now that the discovery window has closed, warrants a lesser sanction. As indicated in Part I.B, the court will grant Barnes's motion for sanctions to the extent it requests an order prohibiting Road Carriers from moving for partial summary judgment on Barnes's negligence and gross-negligence claims against it, given that a complete summary-judgment evaluation of those claims would depend, in part, on what Road Carriers' corporate representative said at a deposition that never happened.

Road Carriers also argues that sanctions are unwarranted because it is entitled to dismissal of Barnes's claims, or at least some of them, under the Rule 12(b)(6) standard (which would not allow for consideration of evidence, whether obtained through a deposition of its corporate representative of otherwise, *see Stanley v. City of Sanford*, 145 S. Ct. 2058, 2062 (2025)). But that argument just highlights Road Carriers' failure to file a Rule 12 motion addressing the operative complaint. Road Carriers may be right that the type of formulaic recitations that Barnes included in her operative complaint do not meet the federal pleading standard. But we are now well beyond the pleading stage. The discovery window has closed, the parties have put forth summary-judgment evidence, and trial is scheduled to start next month. *See* Dkt. 91.

Barnes, however, has not shown entitlement to the other remedies she seeks, including an award of expenses. Because each side had difficulty scheduling depositions with the other, *see* Dkts. 56 at 6, 77 at 3, and because the corporate representative's deposition was scheduled for the same day as Pardillo's deposition, reducing any expense incurred because of the corporate

representative's nonappearance, the circumstances make such an award unjust. *See* Fed. R. Civ. P. 37(d)(1)(3).

### III. Motion to Exclude Evidence

The final question is whether to exclude, on Barnes's motion, medical records that the defendants obtained through a non-party subpoena for deposition on written questions that was served before the discovery deadline but that requested production of documents after the deadline. *See* Fed. R. Civ. P. 31(a)(4) (providing that "[a] public or private corporation, a partnership, an association, or a governmental agency may be deposed by written questions in accordance with Rule 30(b)(6)"). When answering that question, the court has considerable discretion. *Wegener*, 527 F.3d at 692; *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 375 (5th Cir. 2004). Under the text of Rule 37(c)(1) and case law interpreting it, Barnes has shown entitlement to exclusion of the evidence at trial.

As noted, the relevant scheduling order set a March 14, 2025, deadline for "[a]ll discovery" to be "completed." Dkt. 79 at 2. That meant all discovery needed to happen by that date, not just that all discovery needed to be requested by that date. *See Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 4502615, at *2 (E.D. Tex. Oct. 1, 2021); *Front-Line Promotions & Mktg., Inc. v. Mayweather Promotions, LLC*, No. CIV. A. 08-3208, 2009 WL 928568, at *4 (E.D. La. Apr. 2, 2009). The parties appear to have understood that. *See* Dkt. 77 at 2–5.

Yet the date the defendants requested production of documents post-dated the agreed and court-ordered discovery deadline. Dkt. 94 at 13. The defendants note that, when they received the records nearly two months after that deadline, they promptly disclosed them to Barnes. Dkt. 96 at 2; *see Aikens v. Cent. Oregon Truck Co., Inc.*, No. 4:20-CV-00567, 2021 WL 4312712, at *4 (E.D. Tex. Sept. 22, 2021). But Barnes does not accuse the defendants of sitting on records that they should have turned over sooner. *See, e.g.*, *Fuller v. CIG Fin., LLC*, No. 3:22-CV-1289-D, 2023 WL 8482889, at *3 (N.D. Tex. Dec. 7, 2023). She contends that the defendants unjustifiably delayed seeking production of the records in the first place. The defendants admittedly became aware of

the need for the records when Barnes was deposed in late August 2024, *see* Dkts. 96 at 5, 96-3 at 4, but they did not serve the subpoena until early March 2025.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless." *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-CV-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021), *report and recommendation adopted*, No. 3:18-CV-1091-X, 2021 WL 3493496 (N.D. Tex. Aug. 9, 2021); *see Current v. Atochem N. Am., Inc.*, 2001 WL 36101282, at *2 (W.D. Tex. Sept. 18, 2001).

The defendants have not met that burden. They have not explained why more than six months went by between Barnes's deposition and their service of the subpoena for medical records regarding the subsequent collision she mentioned. And although they argue that the post-deadline production was harmless, they do not deny Barnes's assertion that "it is too late for [Barnes] to conduct any follow-up discovery to investigate the basis for . . . statements in the records or any reason that they may be inaccurate." Dkt. 94 at 8.

In arguing that the records "are significant because they contain evidence of [Barnes's] medical treatment as a result of a [subsequent] motor vehicle collision," creating "a proximate causation issue for her personal injury claims, as [Barnes has not distinguished the medical treatment and associated expenses related to [the subsequent] collision . . . from the incident" at issue here, the defendants demonstrate that one the *CQ* factors—the importance of the evidence—points in their favor. *See CQ*, 565 F.3d at 280; *King*, 117 F.4th at 307. But the other three factors—the prejudice to the opposing party of including the evidence, the possibility of curing any prejudice by granting a continuance, and the explanation for the party's failure to disclose, *id.*—point the other way. "[H]arm is particularly likely when disclosure is made on or after the discovery deadline, such that it prevents the opposing party from rebutting the information without delaying the schedule." *Carter v. BPCL Mgmt., LLC*, No. 19-60887-CIV, 2021 WL 12300390, at *2 (S.D. Fla. Sept. 15,

2021). The court has already extended the schedule several times; doing so again would require a change of the trial date. And as already noted, notwithstanding their prompt disclosure of the records once received, the defendants have not explained why they did not serve the subpoena requesting them much sooner.

The defendants assert that Barnes could have moved to quash the subpoena, adding that a party must usually do so within the time set for compliance with the subpoena's production request. *See Cunningham*, 2021 WL 4502615, at *2; *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *2 (E.D. Tex. Nov. 9, 2020). But they do not cite cases concluding that such a failure dooms a motion to exclude. Nor do they cite any missed deadline for Barnes's motion. In any event, it is at least possible that the target of the subpoena could have responded quickly, producing the records before the discovery deadline, in which case a motion to quash could not have been based on the theory that animates Barnes's motion to exclude.

If the defendants could show that the records would be used "solely for impeachment," they would not have run afoul of Rule 26, which excludes such evidence from the scope of required disclosure. Fed. R. Civ. P. 26(a)(1)(A)(ii); *see id.* R. 37(c)(1), advisory cmte. n. to 1993 amend. (explaining that Rule 37(c)(1)'s preclusion sanction does not apply to evidence offered "solely for impeachment purposes"). But the defendants have not made that argument, and the parties' filings suggest that they would not be able to. *See Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005). *Cf. Sherwood v. BNSF Ry. Co.*, No. 116CV00008EJLREB, 2018 WL 3340571, at *5 (D. Idaho July 6, 2018) (case in which aligned parties argued that challenged evidence was to be used for impeachment purposes, no other was purpose was stated, and the evidence was therefore "not required to be disclosed at all").

In this circuit, evidence with both substantive and impeachment attributes must be disclosed under Rule 26. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517–18 (5th Cir. 1993); *see Anvar v. Dwyer*, No. 1:19-CV-00523-JJM-LDA, 2024 WL 4680294, at *2 (D.R.I. Nov. 5, 2024) (citing *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998)); *see also Webster v. Milwaukee County*, No. 08-C-481, 2010 WL 4736232, at *2 (E.D. Wis. Nov. 16, 2010) (noting that, in other

jurisdictions, "the exception applies merely if the evidence is offered as impeachment rather than in the proponent's case in chief"). It appears that, even if they could be used for impeachment purposes, the medical records at issue would also have substantive value for the defendants. *See* Dkt. 96 at 4–5. Their mixed nature puts them outside the scope of the "solely for impeachment" exception in Rule 26. *Chiasson*, 988 F.2d at 517–18.

## CONCLUSION

It is **ORDERED** that:

(1) the defendants' motion for partial summary judgment, Dkt. 50, is **GRANTED** as to Barnes's gross-negligence claim against Pardillo and **DENIED** in all other respects;

(2) Barnes's motion for discovery sanctions, Dkt. 82, is **GRANTED** to the extent that the defendants cannot maintain the part of their motion for partial summary judgment that challenges Road Carriers' alleged liability and **DENIED** in all other respects; and

(3) Barnes's motion to exclude untimely evidence, Dkt. 94, is **GRANTED**.

So **ORDERED** and **SIGNED** this 12th day of September, 2025.

_____
Bill Davis
United States Magistrate Judge